824 F.2d 1349
 56 USLW 2051, RICO Bus.Disp.Guide 6693
 PETRO-TECH, INC., Robert Chuckrow, Gary Goldberg, Sterling
Keystone Development, Inc., S. David Friedman, Mallory Group
& Company, Inc., John E. Karpac, Financial Programs, Inc.,
Hummingbird Associates, Inc., Sterling Keystone Services,
Inc., Howard L. Ragsdale, Rock Ridge Drilling Associates,
Northeast Drilling Associates, L.P., Pine Valley Drilling
Associates, L.P., G.G.-I Drilling Associates, L.P., Mountain
Drilling Associates, L.P., B.C.-I Drilling Associates, L.P.,
Sterling Keystone Drilling Associates, 1982-B, Sterling
Keystone Drilling Associates, 1982-C, and CDA Drilling
Associates, L.P., Appellants,
v.
The WESTERN COMPANY OF NORTH AMERICA, Joseph Farina, Barry
R. Rodkey, Glen Konya, Matt Boese, Fred E. Schriefer,
Richard D. Rowell, Michael W. Dory, and John Does Nos. One
Through Twenty-Five, Appellees.
 No. 86-3361.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 22, 1987.
Decided July 13, 1987.
Rehearing and Rehearing In Banc Denied Aug. 12, 1987.
 
 Arthur M. Schwartzstein (argued), Donald L. Herskovitz, Battaglia and Herskovitz, Washington, D.C., Roger H. Taft, MacDonald, Illig, Jones & Britton, Erie, Pa., for appellants.
 James T. Marnen (argued), Sean J. McLaughlin, Know Graham McLaughlin Gornall and Sennett, Inc., Erie, Pa., for appellees.
 Before SEITZ, BECKER and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This appeal from the dismissal of plaintiffs' complaint in a civil RICO case for failure to state a claim, Fed.R.Civ.P. 12(b)(6), raises important questions concerning the role of aiding and abetting and vicarious liability under the civil RICO statute, 18 U.S.C. Secs. 1961 et seq. Defendants seek to justify the complaint's dismissal on several grounds.
 
 
 2
 We begin by addressing defendants' request that we define a RICO pattern, and that we hold that requirement unmet in this case. Because the complaint alleges so many related RICO predicate acts, however, by so many persons, and affecting so many victims over so protracted a period, we find it unnecessary in this case to define a RICO pattern: under any conceivable definition the requirement is satisfied by the allegations in this case. We therefore reverse the dismissal of Counts I through VI.
 
 
 3
 We then turn to Western's contention that there cannot be respondeat superior or aiding and abetting liability under RICO, and therefore that it cannot be liable under either of those theories in connection with its employees' alleged RICO violations. We hold that a corporation which is alleged to be a RICO enterprise under 18 U.S.C. Sec. 1962(c) cannot be held vicariously liable for RICO violations committed by its employees if the employees are the Sec. 1962(c) persons named in the complaint as having conducted the affairs of the enterprise through a pattern of racketeering activity. We hold further that a Sec. 1962(c) enterprise cannot be liable as an aider and abettor. We therefore affirm the district court's dismissal of Counts XI and XII insofar as they operate in tandem with Count III, which is brought under Sec. 1962(c) and which alleges that Western is a RICO enterprise.
 
 
 4
 Unless the employer is the Sec. 1962(c) enterprise at the same time as its employees are the Sec. 1962(c) persons, however, vicarious liability may be appropriate. Similarly, so long as the aider and abettor is not alleged to have been a Sec. 1962(c) enterprise, aiding and abetting liability may be invoked. In all other constellations of Sec. 1962(c) enterprises and persons, and under subsection (a) of Sec. 1962, we hold that both of these theories of liability may be appropriate so long as the employer/enterprise actually benefited from the persons' predicate acts. We therefore reverse the dismissal of Counts XI and XII to the extent that they operate in tandem with Counts I, II, IV, V and VI.
 
 
 5
 Lastly, we hold that the complaint's allegations concerning the liability of defendants Western and Michael Dory are sufficiently particular to satisfy the standards imposed by Rule 9, Fed.R.Civ.P. Therefore, except as noted above, we reverse the complaint's dismissal and remand for further proceedings.
 
 I. Facts and Procedural History
 
 6
 Plaintiff Petro-Tech is an oil and gas drilling and well management company. In two contracts covering different time periods and different wells, Petro-Tech agreed to hire defendant Western, and its subsidiary defendant Western Petroleum Services, to provide "fracing" services at wells Petro-Tech managed for its clients. The wells contain oil-permeated rock, and in "fracing" the wells Western would use water and sand to separate the oil from the rock. Petro-Tech's clients are mostly oil and gas exploration, drilling and well operating syndicates. Nineteen of them are also plaintiffs in this case.
 
 
 7
 Plaintiffs allege that during the relevant time period the market for the services Western sells was quite competitive. Plaintiffs claim that in over eighty instances defendants (Western and various Western employees) responded to this competition and the low profit margins it caused by billing plaintiffs and other customers for more services than were actually provided, and for more materials than were actually used, on the wells Western had agreed to frace.[1] Plaintiffs allege that Western used the mails to solicit Petro-Tech's business, and that the solicitations thus sent fraudulently described the services that would be provided. Complaint paragraphs 35 and 36. Similarly, plaintiffs claim that after work was done fraudulent reports of the services purportedly provided were sent through the mails. Plaintiffs allege that the manager of the Meadville, Pennsylvania, yard, as well as several high ranking Western officers, knew of the challenged practices, that Western defrauded other customers in the same way, and that "[d]efendants' wrongful conduct was deliberate company policy." Complaint p 43. In civil RICO terms, plaintiffs allege that the defendants conducted the affairs of an enterprise (principally Western, though the complaint also sets out other theories, under which other entities are the enterprise) through a pattern of racketeering activity.
 
 
 8
 The district court dismissed the complaint on the ground that it alleged only "garden variety" fraud by a legitimate business enterprise, which the district court did not believe RICO capable of reaching.[2] But the Supreme Court has squarely rejected reasoning of this kind. The Supreme Court believed that, in passing RICO,
 
 
 9
 Congress wanted to reach both "legitimate" and "illegitimate" enterprises. United States v. Turkette, [452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ]. The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences. The fact that Sec. 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued.... "[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." Haroco, Inc. v. American National Bank & Trust Co. of Chicago, [747 F.2d 384] at 398 [ (7th Cir.1984) ].
 
 
 10
 It is true that private civil actions under the statute are being brought almost solely against such defendants, rather than against the archetypal, intimidating mobster. Yet this defect--if defect it is--is inherent in the statute as written, and its correction must lie with Congress. It is not for the judiciary to eliminate the private action in situations where Congress has provided it simply because plaintiffs are not taking advantage of it in its more difficult applications.
 
 
 11
 Sedima v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275 at 3287, 87 L.Ed.2d 346 (1985). This language forecloses us from upholding the district court's view that "garden variety fraud" is beyond RICO's reach.
 
 
 12
 Defendants do not attempt to justify the dismissal on this ground. Instead, they defend the district court's result on essentially three other bases. We address each of them in turn.
 
 
 13
 II. The Scope of RICO and The Definition of "Pattern"
 
 
 14
 Appellees first defend the dismissal of the complaint by suggesting that we construe RICO's pattern requirement to exclude the kind of fraud the plaintiffs allege here. In Sedima, 105 S.Ct. at 3287 (emphasis added), Justice White noted that
 
 
 15
 [t]he "extraordinary" uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, the inclusion of wire, mail and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of pattern.
 
 
 16
 "The definition of a 'pattern of racketeering activity,' " the Court went on to explain,
 
 
 17
 differs from the other provisions in Sec. 1961 in that it states that a pattern "requires at least two acts of racketeering activity," Sec. 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." S.Rep. No. 91-617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan).
 
 
 18
 105 S.Ct. at 3285 n. 14. The Court in Sedima held that, in addition to requiring two predicate acts, RICO is violated only if the two acts are related to one another. Id.
 
 
 19
 Perceiving these comments as an invitation so to narrow the statute, a number of courts have begun to use the pattern requirement to prevent RICO from reaching "legitimate business" perpetrating "garden variety fraud." See Fleet Management Systems v. Archer-Daniels-Midland Co., 627 F.Supp. 550, 555 (C.D.Ill.1986). Extending that invitation to us, defendants herein argue that Sedima
 
 
 20
 sen[t] a strong signal to the lower courts to further develop the pattern requirement in such a fashion as to curb the trend of garden variety commercial disputes being dragged before an already burdened federal judiciary because of the love of treble damages, attorney fees and the settlement leverage to be gained from a RICO charge.
 
 
 21
 Def. Br. at 30. Whatever the wisdom of defendants' proposed invitation as a policy matter, we decline for three reasons to join this effort.
 
 
 22
 First, while we are touched by defendants' concern for our workload, we believe that Sedima warns us not to construe RICO in a limited way out of a desire to prevent the statute from reaching people other than organized criminals. In fact, while defendants eschew reliance on the district court's rationale for dismissing the case, defendants' invitation is nothing but a more elaborate presentation of the ideas in Judge Willson's opinion: defendants, like Judge Willson, attempt to distinguish between "RICO fraud" and garden variety fraud, and to limit RICO's reach to the former. We must reject defendants' invitation, therefore, for the same reason that defendants have correctly rejected the rationale in the district court's opinion.
 
 
 23
 Second, while in the future this Court (and ultimately the Supreme Court) will doubtless be obliged to clarify the meaning of the pattern requirement in light of Sedima, the breadth of the fraud alleged in this complaint satisfies us that, even if all of the tests urged upon us by defendants were applied to this complaint, the complaint would still pass muster. Specifically, the cases defendants urge us to follow have interpreted RICO's "pattern" requirement to mean that, in addition to the requisite number of predicate offenses, a complaint must allege that the predicate offenses form at least two separate but related criminal "schemes," Superior Oil Co. v. Fulmer, 785 F.2d 252 (8th Cir.1986) "episodes," Allington v. Carpenter, 619 F.Supp. 474 (C.D.Cal.1985) or "activities." Richter v. Sudman, 634 F.Supp. 234 (S.D.N.Y.1986); Northern Trust Bank/O'Hare v. Inryco, Inc., 615 F.Supp. 828 (N.D.Ill.1985). Whether these three terms imply the same or different tests, we think that the acts alleged here would satisfy any such requirement.[3]
 
 
 24
 In Superior Oil, for example, defendants had moved a device which metered the flow of oil purchased by a customer of the plaintiff so that it would overstate that flow. Defendants then submitted a number of reports overstating the amount of oil the customer had consumed. The Eighth Circuit found that these wrongful acts did not satisfy RICO's "pattern" requirement.
 
 
 25
 The Superior Oil court reached this result in reliance on language from RICO's legislative history, quoted by Justice White in Sedima, that "the infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." See 785 F.2d at 257, quoting Sedima, 105 S.Ct. at 3285 n. 14, which was in turn quoting legislative history.
 
 
 26
 Although the Superior Oil court found the "relationship prong" of this test satisfied, it held that plaintiff had
 
 
 27
 failed to prove the "continuity" sufficient to form a "pattern of racketeering activity." The actions of Fulmer, Branch and Nichols comprised one continuing scheme to convert gas from Superior Oil's pipeline. There was no proof that Fulmer, Branch or Nichols had ever done these activities in the past and there was no proof that they were engaged in other activities elsewhere.
 
 
 28
 785 F.2d at 257.
 
 
 29
 Similarly, in Northern Trust Bank, the president of a contracting firm allegedly worked out a kickback scheme with a subcontractor in return for the award of the subcontract. The parties implemented the scheme through a number of payments, alleged to constitute individual predicate acts. 615 F.Supp. at 830. The district court dismissed a RICO count filed by the original client against the contractor because the alleged separate instances of mail fraud were all part of a single "scheme." Id. at 832-33.
 
 
 30
 We believe that the Superior Oil and Northern Trust line of cases[4] is distinguishable from this case on the basis of the time period, number of victims, number of perpetrators and number of predicate acts at issue. Defendants here are alleged to have defrauded plaintiffs with respect to services and materials provided for eighty wells, owned by nineteen parties and serviced by a twentieth, over a period of eleven months, as part of work done under two separate contracts themselves pertaining to different time periods. These allegations suggest more than the single schemes held inadequate to support the civil RICO actions in Superior Oil and Northern Trust. Because the words are so flexible, we acknowledge that these fraudulent acts could conceivably be characterized as part of a single "scheme" or "episode." But we believe that if faced with the complaint in this case, the Superior Oil and Northern Trust courts would not use those words so expansively--that on these facts the Superior Oil court would find more than one scheme, and the Northern Trust court would find more than one episode.[5] Because the allegations here would satisfy the pattern requirement under even the most rigorous tests we find it unnecessary to adopt any test in order to decide this case.[6]
 
 
 31
 In sum, having satisfied ourselves that plaintiffs' allegations establish a pattern under RICO, we are unwilling to pronounce further upon the meaning of that term after Sedima. The definitions of pattern in Superior Oil and Northern Trust require a court to determine whether acts are sufficiently unrelated to constitute two distinct "schemes," "episodes" or "activities." See Allington, (" 'pattern' of racketeering activity must include racketeering acts sufficiently unconnected in time or substance to warrant consideration as separate criminal episodes"). At the same time, however, Sedima requires that the predicate acts must be related to one another to some as yet unspecified degree. See 105 S.Ct. at 3285 n. 14; Superior Oil, 785 F.2d at 257. These rules are obviously in tension with one another--the "relatedness" rule pulling the predicate acts together, the Superior Oil and Northern Trust rules pulling them apart. If the two rules are to operate together the words "scheme," "episode" or "activity" will have to be defined with sufficient precision that courts can consistently tell where one scheme leaves off and another related one begins. We have some doubt whether that goal could ever be attained. But if we are to attempt it we believe that a full record is necessary. This case presents us only with bare pleadings. For that reason as well we believe that remand is appropriate.
 
 
 32
 III. Aiding and Abetting and Vicarious Liability
 
 A. Introduction
 
 33
 Defendant Western also attacks the sufficiency of this complaint on another ground, which pertains to it alone. Western contends that the complaint impermissibly alleges it to be both an enterprise and a person for RICO purposes when in fact, Western argues, a defendant may fit into one or another of those legal categories but not both at the same time. Specifically, Western attacks Counts XI and XII of the complaint, which allege that it is liable on the basis of the doctrine of respondeat superior or as an aider and abettor for all of the wrongs alleged in Counts I through X of the complaint.[7] Western contends that imposing liability under either of these theories would enable plaintiffs to circumvent what it contends is the rule preventing an enterprise from being liable to the (other) victims of racketeering activity.
 
 
 34
 Since there is no federal general common law, Erie Railroad v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), the applicability of common law doctrines in litigation under federal statutes depends on whether those principles advance the goals of the particular federal statute which plaintiffs allege has been violated. American Society of Mechanical Engineers v. Hydrolevel Corp., 456 U.S. 556, 570, 102 S.Ct. 1935, 1944-45, 72 L.Ed.2d 330 (1982) (applying common law principle of apparent authority in antitrust context because the doctrine "is consistent with the congressional intent to encourage competition" which animates the antitrust laws).
 
 
 35
 This Court has already held that one can violate RICO criminally by aiding and abetting the commission of two predicate acts, provided that all of RICO's other requirements are also satisfied. United States v. Local 560, 780 F.2d 267, 288 n. 25 (3d Cir.1985). We have not yet addressed the question of civil RICO liability for aiding and abetting. But the Fifth Circuit has declared its willingness to find civil RICO violated by an aider and abettor, Armco Indus. Credit Corp. v. SLT Warehouse Co., 782 F.2d 475, 485-86 (5th Cir.1986), as has one judge in the Southern District of New York. Laterza v. American Broadcasting Co., 581 F.Supp. 408, 412 (S.D.N.Y.1984). We now join those courts, and hold that, if all of RICO's other requirements are met, an aider and abettor of two predicate acts can be civilly liable under RICO.
 
 
 36
 We begin our explanation of this conclusion by observing that aiding and abetting is most commonly used as a theory of criminal, rather than civil liability. It is generally said to be defined in American law by several well known criminal law cases, see Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); United States v. Peoni, 100 F.2d 401 (2d Cir.1938), and is now a basis of federal criminal liability by operation of 18 U.S.C. Sec. 2. Through the criminal law, however, aiding and abetting has also become a basis for civil liability under the federal securities laws. See David S. Ruder, Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification and Contribution, 120 U.Pa.L.Rev. 597, 620-28 (1972). While the Supreme Court has reserved the issue, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 190-91 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976), every circuit court to have addressed the question has held that there can be civil liability for aiders and abettors of securities law violations. See Monsen v. Consolidated Dressed Beef Co., 579 F.2d 793 (3d Cir.1978) (imposing aiding and abetting liability under Sec. 10b of the Securities and Exchange Act of 1934); Thomas Lee Hazen, Securities Regulation Sec. 7.8 at 208-09 & n. 4 (1985) (collecting cases).
 
 
 37
 The doctrine also has a civil common law application. The Restatement (Second) of Torts Sec. 876(b) holds that liability "[f]or harm resulting to a third person from the tortious conduct of another ... [can be imposed upon a party who] (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself". That Restatement provision has been applied by a number of state and federal courts in civil litigation. See, e.g., Rael v. Cadena, 93 N.M. 684, 604 P.2d 822 (1979) (defendant liable under Sec. 876(b) for encouraging third party to assault plaintiff); Cobb v. Indian Springs, Inc., 258 Ark. 9, 522 S.W.2d 383 (1975) (defendant liable under same theory for urging third party to drive car recklessly, which resulted in driver's injuring plaintiff); Smith v. Thompson, 103 Idaho 909, 655 P.2d 116 (Ct.App.1982) (employer liable for encouraging employee to burn down plaintiff's house). See the scholarly discussion of civil aiding and abetting by Judge Wald in Halberstam v. Welch, 705 F.2d 472, 481-86 (D.C.Cir.1983), which reviews in detail the nature and scope of civil liability for aiding and abetting tortious conduct.[8]
 
 
 38
 Plaintiffs have not argued that there is a private right of action under 18 U.S.C. Sec. 2. Moreover, this is not a securities case, and the predicate acts alleged are violations of the mail fraud statute, 18 U.S.C. Sec. 1341, not violations of the securities laws. We therefore proceed on the assumption that Count XII invokes the civil common law doctrine of aiding and abetting.[9]
 
 
 39
 Applying the teaching of Mechanical Engineers in the aiding and abetting context, we note that one important purpose of RICO's civil provisions is to permit recovery by the victims of racketeering activity. One who has aided and abetted the commission of two predicate offenses is guilty of those offenses. Standefer v. United States, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980); United States v. Provenzano, 334 F.2d 678, 691 (3d Cir.1964); United States v. Kegler, 724 F.2d 190, 201 (D.C.Cir.1984) ("[a]n individual can be indicted as a principal for commission of a substantive crime and convicted by proof showing him to be an aider and abettor"). The doctrine of aiding and abetting is simply one way that an individual can violate the substantive criminal laws. See 18 U.S.C. Sec. 2 ("[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal"); Kegler, 724 F.2d at 200 ("aiding and abetting ... is not an independent crime under 18 U.S.C. Sec. 2"). So long as all of RICO's other requirements are met, we can see no reason why victims should not be able to recover from anyone who has committed the predicate offenses RICO enumerates, regardless of how he committed them. As a general matter, therefore, civil RICO liability for aiding and abetting will advance RICO's goals, and Mechanical Engineers-instructs us that the doctrine should therefore be applied in this context.
 
 
 40
 While many commentators have noted the difficulty of explaining the goals of the doctrine of respondeat superior, see W. Page Keeton, et al., Prosser & Keeton on Torts Sec. 69 at 500 text at note 6 (5th ed. 1984), the doctrine can probably be best explained as an outgrowth of the sentiment that "it would be unjust to permit an employer to gain from the intelligent cooperation of others without being responsible for the mistakes, the errors of judgment and the frailties of those working under his direction and for his benefit." Restatement (Second) of Agency Sec. 219, comment a on subsection (1).[10] Here too the goals of the common law doctrine are entirely consistent with RICO's goal to facilitate recovery by the victims of racketeering activity. We therefore hold that the doctrine of respondeat superior may be applied under RICO where the structure of the statute does not otherwise forbid it.
 
 
 41
 As the foregoing qualification suggests, however, there are some circumstances in which both theories of liability are inconsistent with RICO's goals and operation. In particular, this and most other courts have held that for purposes of Sec. 1962(c) an enterprise may not be held liable under RICO. Hirsch v. Enright Refining Co., 751 F.2d 628 (3d Cir.1984); Haroco, Inc. v. American National Bank & Trust Co., 747 F.2d 384, 401-02 (7th Cir.1984); see Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1396 n. 2 (9th Cir.1986) (collecting cases). The contrary rule has been adopted only by the Eleventh Circuit, in United States v. Hartley, 678 F.2d 961 (11th Cir.1982).
 
 
 42
 If the enterprise in a particular RICO case is also the employer of the RICO persons, respondeat superior liability may be inconsistent with the rule in Enright. That case would also suggest that a 1962(c) enterprise cannot have aided and abetted the RICO persons. Because the rule in Enright pertains only to Sec. 1962(c), however, the applicability of this argument to the complaint before us depends on which subsection of RICO each individual Count is brought under; whether that Count is brought against Western as a defendant, and whether or not Western is alleged to be an "enterprise" for purposes of that Count. Application of the rule in Mechanical Engineers--that common law doctrines will be applied in federal litigation to the extent that they advance the goals of the statutes sued under--will therefore require a detailed inspection of the bases on which each count of the complaint seeks to hold Western liable. For that reason we set out the following chart, which describes the six RICO counts for which Petro-Tech seeks to hold Western liable through the doctrines of respondeat superior and aiding and abetting liability.
 
 
 43
 Count
 names
 Western Western Sec. 1962
 an as a subsection
Count "enterprise"? defendant? *
-------------------------------------------------------------------------------
I yes yes a
II no yes a
III yes (alternatively no c
 Western
 Petroleum
 Services
 the enterprise)
IV no yes c
V no (conspiracy yes d
 count)
VI no (conspiracy no d
 count)
-------------------------------------------------------------------------------
 
 
 44
 *All counts which name Western as a defendant also name it as a person. This
 
 
 45
 is consistent with the structure of Sec. 1962, under which liability is imposed
 
 
 46
 on "persons" who engage in racketeering activity.
 
 
 47
 B. Respondeat Superior and Aiding and Abetting Liability Under Sec. 1962(c)
 
 
 48
 We begin with Count III, with respect to which Western's arguments have most force. As the above chart shows, Count III of the complaint is brought under Sec. 1962(c) and alleges that Western is an enterprise. Western is not named as a "person," however, and Count III is not brought against Western as a defendant. See note *, at 1358. So long as it operates only on its own, rather than in tandem with Counts XI and XII, Count III is consistent with the rule in Enright, because under it plaintiffs seek recovery only from the individual defendants and not from the Sec. 1962(c) enterprise.
 
 Section 1962(c) provides:
 
 49
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 50
 We explained in Enright that Sec. 1962(c) was drafted in such a way that Congress must have intended the "person" and the "enterprise" to be distinct entities under that provision. Under the language of that provision, we held,
 
 
 51
 the person must be employed by or associated with an "enterprise." The Enright Refining Company, Inc. clearly is not employed by the Enright Refining Company, Inc.; nor is it logical to say that the Enright Refining Company, Inc. is associated with the Enright Refining Company, Inc. Thus the language contemplates that the "person" must be associated with a separate "enterprise" before there can be RICO liability on the part of the "person."
 
 
 52
 We therefore held that Sec. 1962(c) was intended to govern only those instances in which an "innocent" or "passive" corporation is victimized by the RICO "persons," and either drained of its own money or used as a passive tool to extract money from third parties. See 751 F.2d at 633-34; see also Judge Cudahy's thoughtful opinion in Haroco, 747 F.2d at 399-402, which explains the rationale for this rule in very helpful detail, and upon which we relied in Enright.
 
 
 53
 Western argues that Counts XI and XII have the effect of making Western, which is named as an enterprise in Count III, responsible as a perpetrator for the acts complained of in Count III. It claims further that such liability is inconsistent with our recognition that Sec. 1962(c) enterprises may not be forced to make whole the third parties which were victimized along with or through the enterprise.
 
 
 54
 We agree with Western that respondeat superior and aiding and abetting liability would disrupt the intended operation of Sec. 1962(c), by making the Sec. 1962(c) enterprise--the victim, as Enright tells us, of the racketeering activity--liable. Respondeat superior would have that effect because it renders the employer--i.e. the enterprise--responsible for the acts of the employees--i.e. the persons. Respondeat superior liability under Sec. 1962(c) is therefore foreclosed by the rationale in Enright insofar as it would make the enterprise liable for the RICO violations which victimized it.[11] See Schofield v. First Commodity Corp., 793 F.2d 28, 32-33 (1st Cir.1986), which reaches the same conclusion we do here, in reliance on similar reasoning; see also Luthi v. Tonka Corp., 815 F.2d 1229 (8th Cir.1987). Aiding and abetting would have the same effect when the aider and abettor is also the Sec. 1962(c) enterprise. For this reason the dismissal of Counts XI and XII will be affirmed insofar as they purport to hold Western liable for the liabilities of other defendants under Count III.
 
 
 55
 C. Respondeat Superior and Aiding and Abetting Liability Under Sec. 1962(a)
 
 
 56
 Section 1962(a) provides in relevant part as follows:
 
 
 57
 It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
 
 
 58
 As the Seventh Circuit noted in Haroco,
 
 
 59
 Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a) therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering. This result is in accord with the primary purpose of RICO, which after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it.
 
 Haroco, 747 F.2d at 402.[12]
 
 60
 Neither Enright nor Haroco nor any other appellate case has yet held that the enterprise and the person must be distinct entities under Sec. 1962(a), or (what amounts to the same thing) that the enterprise may not be liable under that provision. Following the reasoning applied above with respect to Sec. 1962(c), if Sec. 1962(a) enterprises may be liable under RICO then pursuant to that subsection Western may be liable under respondeat superior, or as an aider and abettor, even if it is alleged to be the RICO enterprise.
 
 
 61
 Western, however, invites us to go further than Enright and other appellate courts have gone until now, and to hold that the aiding and abetting and respondeat superior theories of liability are improper under all subdivisions of RICO if the "persons" are employees of the "enterprise," or if the enterprise itself is alleged to be an aider and abettor. Defendants' Motion to Dismiss at Defense I, p (d), App. at 73; Defendants' Brief before this Court at 47. In so arguing Western relies on Rush v. Oppenheimer & Co., 628 F.Supp. 1188 (S.D.N.Y.1985), which reached the conclusion advocated by Western on vicarious liability after first deciding that an enterprise may never be liable pursuant to any subsection of Sec. 1962. 628 F.Supp. at 1197. (Rush did not address the question of aiding and abetting liability.)
 
 
 62
 We begin by noting that the Rush court's conclusion on respondeat superior is at odds with the Seventh Circuit's conclusion in Haroco, 747 F.2d at 401-02, and with the Ninth Circuit's decision in Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393 (9th Cir.1986). Like the two appellate courts which reached the opposite conclusion, however, the Rush court decided as it did in reliance on the language of Sec. 1962 and on the policies which Congress sought to advance in passing RICO. We too look to those guides in making our decision.
 
 
 63
 The Rush court quoted the discussion from Haroco reproduced above, text at n. 12. But the Rush court disagreed with that analysis, reasoning as follows:One can interpret the lack of a required nexus between person and enterprise in section 1962(a) to indicate the need for a more distinct pleading of enterprise and statute violator because the statute contemplates an enterprise which can be entirely unrelated to the predicate acts. While section 1962(c) contemplates a perpetrator working through the legitimate or illegitimate enterprise in further (sic) of a racketeering scheme, a section 1962(a) "enterprise" can be the bounty purchased with the racketeering profits, the entity used to "launder" the ill-gotten gains. Therefore, if it is inappropriate to plead identity in 1962(c), it is then inappropriate to plead it under section 1962(a), particularly in light of our knowledge that the statute was not intended to convict the infiltrated enterprise but the violator of the predicate acts.
 
 
 64
 Rush, 628 F.Supp. at 1197. We find this reasoning unpersuasive, and we agree instead with Haroco. Because the enterprise under Sec. 1962(a) may have been the racketeers' victim or passive instrument, the Rush court concludes that we must ignore those situations in which the enterprise does in fact profit from racketeering activity perpetrated by its employees. This conclusion is unnecessary: so long as the enterprise does in fact benefit from the racketeering activity challenged, there is no reason why we must ignore the corporation's role in the activity, if any, and no reason why an injured third party may not recover from the enterprise.
 
 
 65
 We stress, however, that the complaint before us alleges that Western has benefited from the activity challenged, and our decision goes only far enough to decide the merits of that complaint. In concluding that there can be respondeat superior and aiding and abetting liability under Sec. 1962(a) when the enterprise benefits from the racketeering activity, we follow both the Haroco court, 747 F.2d at 402 ("corporation-enterprise [will be] liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity"); and the Ninth Circuit in Schreiber, 806 F.2d at 1398 ("where a corporation engages in racketeering activities and is the direct or indirect beneficiary of the pattern of racketeering activity, it can be both the 'person' and the 'enterprise' under section 1962(a)").
 
 
 66
 Having decided that RICO is not subverted if Sec. 1962(a) enterprises are sometimes held liable, we conclude that vicarious liability for the employer of RICO persons may be appropriate under that provision even if the employer is also the RICO enterprise. For the same reasons, we hold that aiding and abetting liability for the 1962(a) enterprise may also be appropriate.
 
 
 67
 As we noted above, these theories of liability are out of place to the extent that they enable a plaintiff to circumvent the rule prohibiting RICO enterprises from being liable to the victims of the racketeering activity. Since we have concluded that there is no such blanket prohibition under Sec. 1962(a), both of these bases of liability may be appropriate under that section. Dismissal of Counts XI and XII insofar as they operate in tandem with Counts I, II, V and VI therefore cannot be justified on the basis of the argument Western advances.
 
 
 68
 The final count we deal with in this section is Count IV, which, as the chart shows, is also brought under Sec. 1962(c). It names Western as both a person and a defendant. Unlike Count III, however, Count IV does not name Western as an enterprise. The enterprise in Count IV is alleged to be an association in fact consisting of Western and the individual defendants.[13] Because Western is alleged to have attempted to benefit from its employees' racketeering activity, it is appropriate to allow the victims of that activity to recover from Western. Moreover, although Count IV is brought against Western under Sec. 1962(c), theories of respondeat superior and aiding and abetting liability are not out of place here, because under Count IV Western is not alleged to be an enterprise. Holding Western liable under those theories is therefore not inconsistent with the Enright rule that Sec. 1962(c) enterprises may not be held liable.
 
 
 69
 IV. The Particularity with Which Dory's and Western's
 
 Involvement is Pled
 
 70
 Finally, defendants Dory and Western argue that they should be dismissed from the case because their involvement has not been pled with the degree of particularity required by Rule 9(b), Fed.R.Civ.P. We reject this argument. First, Rule 9(b) provides that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Some precedent has construed this language to mean that a party's vicarious liability need not be pled with particularity. See In re National Student Marketing Litigation, 413 F.Supp. 1156, 1158 (D.D.C.1976); Keys v. Wolfe, 540 F.Supp. 1054, 1066 (N.D.Tex.1982). Even if particularity is required here, however, the complaint in this case is sufficiently detailed about Western's involvement in the scheme.
 
 
 71
 Dory's involvement has also been pled with the requisite degree of particularity. Plaintiffs have alleged the acts involved and the people who they believe committed them. At least at this stage of the case plaintiffs need not attribute each individual act to the individual defendant who committed it.
 
 V. Conclusion
 
 72
 For the foregoing reasons, we affirm the district court's dismissal of Counts XI and XII insofar as those Counts operate in tandem with Count III of the Complaint. Because we reverse the dismissal of the rest of the RICO claims, however, we order that the pendent state claims in Counts VII through X be reinstated. The district court's vacation of the default judgment entered against defendant Farina is also reversed, and that judgment is reinstated.
 
 
 73
 When the complaint was dismissed plaintiffs' discovery requests, and a motion to compel responses thereto, were outstanding. On remand the district court will decide the merits of plaintiffs' motion, including plaintiffs' contention that, by failing to respond in good faith to the discovery sought defendants have waived whatever objections they may once have had to those requests.
 
 
 74
 The judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Specifically, in paragraph 41 of the complaint, plaintiffs allege that:
 (a) Defendants used less sand than the amount contracted. At times, Western would send less sand than required for a frac to the well site; sometimes one of two sand trucks sent to the site was empty. At times, the Meadville Yard ran out of sand and defendant Farina complained to defendant Rowell, who told him to "fake it."
 (b) Defendants used less flow rate than the contracted rate to frac zones.
 (c) Defendants charged for zones that were not treated.
 (d) Defendants delayed starting sand and cut sand short as wells were treated. Instead of using the proper sand/water ratio, defendants treated the wells with a lesser ratio of sand to water, or with only water. Western's service engineers would falsely indicate on charts that proper amounts of sand had been used.
 (e) Instead of using the contracted time to deliver the treatment, defendants treated wells for a shorter period. Western's service engineers rolled chart paper manually to falsely indicate that the time required to deliver the full treatment had been provided.
 (f) Many times Farina would return to the Meadville Yard with sand sold to Petro-Tech but not used due to defendants' wrongful conduct. Defendant Rowell would re-sell the same sand to Petro-Tech or others. It was a common joke around the Meadville Yard as to which service engineer could return from a frac job with the most sand that should have been used during the treatment.
 (g) ... The metering equipment for sand concentration frequently did not work so that the blender tender (the Western employee controlling the sand/water ratio) would have to guess on the amount of sand going into the tub of the blender (where the sand and water are combined). The calibration of the pump truck did not accurately reflect the true flow rate which was actually less than indicated. Western's service engineers manually adjusted the indicated calibration to falsely show the correct flow rate.
 
 
 [2]
 Judge Willson believed that the complaint should be dismissed because "[t]he sum and substance of the wrong committed by defendants against plaintiffs can be characterized as a simple garden variety of fraud." Slip op. at 3, App. at 524. He explained further that
 [p]laintiffs attempt to invoke a federal question jurisdiction because of the use of the mails in sending the inflated invoices, but that is an outgrowth of an ordinary alleged fraud or breach of contract. It is not a racketeering activity as prohibited in the definitions, Sec. 1961 of RICO.
 Slip op. at 8, App. at 529.
 
 
 [3]
 As we discuss in more detail below, a RICO pattern can be found only when the predicate acts are sufficiently related to one another. See at 1355, text following note 5. Defendants concede that the alleged acts are sufficiently related to satisfy this prong of the pattern requirement
 
 
 [4]
 See, e.g., Morgan v. Bank of Waukegan, 615 F.Supp. 836 (N.D.Ill.1985) (Shadur, J.) ("single plot" to defraud plaintiffs in connection with sale to them of interest in drug store chain did not satisfy RICO's pattern requirement), reversed, 804 F.2d 970 (7th Cir.1986); Allington, (pattern requirement unmet where defendants induced plaintiffs to make several loans, secured by worthless promissory notes or real estate trust deeds, by falsely promising high rates of return)
 
 
 [5]
 No courts appear to have construed the pattern requirement more rigorously than the Eighth Circuit in Superior Oil and Judge Shadur in Inryco. A number of courts, however, have found the requirement less demanding. See International Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 154-55 (4th Cir.1987) (holding that "a single, limited fraudulent scheme" does not satisfy the pattern requirement but cautioning that "no mechanical test can determine the existence of a RICO pattern"); Bank of America v. Touche Ross & Co., 782 F.2d 966, 971 (11th Cir.1986) and United States v. Watchmaker, 761 F.2d 1459, 1475 (11th Cir.1985) (rejecting the argument that a RICO pattern requires more than one "scheme or transaction"); Morgan v. Bank of Waukegan, 804 F.2d 970, (7th Cir.1986) (rejecting Judge Shadur's approach in Inryco and holding that "[i]n order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions"); United States v. Ianniello, 808 F.2d 184, 190 (2d Cir.1986) (pattern requirement satisfied whenever defendant alleged to have committed two related predicate acts); R.A.G.S. Couture, Inc. v. Hyatt, 774 F.2d 1350, 1355 (5th Cir.1985) (same). But see Montesano v. Seafirst Commercial Corp., 818 F.2d 423 (5th Cir.1987) (following R.A.G.S. but urging that it be overturned en banc). Given our conclusion that the complaint satisfies the Superior Oil and Inryco standards, it follows a fortiori that it also meets the less demanding requirements imposed in these cases
 
 
 [6]
 Neither has this Court been required on any other occasion to adopt a particular test. See Malley-Duff Associates v. Crown Life Ins. Co., 792 F.2d 341, 353 n. 20 (3d Cir.1986)
 
 
 [7]
 Count XI alleges that the individual defendants "were duly authorized employees, agents and representatives of defendant Western and acted with actual and apparent authority of Western" (p 100); that the individual defendants "were acting within the course and scope of their employment and authority at all times relevant to this complaint" (p 101); and that "[d]efendant Western is liable for the acts committed and damages caused by" the individual defendants "under the doctrine of respondeat superior." (p 101)
 Count XII alleges that "defendant Western aided and abetted" the individual defendants "by rendering substantial assistance to those defendants" (p 104) and that "[a]s a direct and proximate result of its conduct, defendant Western is jointly and severally liable to plaintiffs for all damages as alleged in this complaint" (p 105).
 Counts VII through X are pendent state common law claims. Western does not argue that it cannot be liable as an aider and abettor, or under the doctrine of respondeat superior, for the wrongs alleged in these state law counts.
 
 
 [8]
 But see Cenco, Inc. v. Seidman & Seidman, 686 F.2d 449, 452 (7th Cir.1982) ("[t]here is no tort of aiding and abetting under Illinois law or, so far as we know, the law of any other state; all the cases that [plaintiff] has cited with regard to [the aiding and abetting] count are criminal cases.")
 
 
 [9]
 We deal here only with the question of whether or not the common law doctrine of aiding and abetting can apply under RICO. We have no occasion today to discuss the doctrine's reach or limitations
 
 
 [10]
 See also Prosser & Keeton on Torts, Sec. 69 at 500:
 losses caused by the torts of employees ... are placed upon the employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.
 
 
 [11]
 Under the common law of respondeat superior, it is not clear whether liability will attach when the employer does not benefit, or when the employee does not at least in part intend that the employer will benefit from the wrongful activity. See Restatement (Second) of Agency Sec. 219. In this case Western is alleged to have benefited from all the activity alleged in all counts--even Count III, which is brought under Sec. 1962(c), and in which Western is alleged to be an enterprise. We assume, however, that there could be circumstances in which the common law of respondeat superior would hold an employer liable even when the employer did not benefit from the employee's conduct
 Enright did not hold, however, that a motion to dismiss would be granted under Sec. 1962(c) whenever the enterprise in fact benefited from the racketeering activity; it simply held that there can be no recovery from the enterprise when a claim is made under Sec. 1962(c). It is thus possible for an employer alleged to be an enterprise under Sec. 1962(c) to have benefited from the racketeering activity. Indeed, it may be common. But that does not matter under Enright so long as no attempt is made to recover from the employer. Respondeat superior circumvents the prohibition on recovery, however, and is therefore impermissible under Sec. 1962(c).
 
 
 [12]
 Although this language was dictum in Haroco, which did not involve a claim under Sec. 1962(a), the Seventh Circuit explicitly adopted this discussion and the rule it justifies in Masi v. Ford City Bank & Trust Co., 779 F.2d 397, 401 (7th Cir.1985)
 
 
 [13]
 18 U.S.C. Sec. 1961(4) defines an enterprise to include "any ... group of individuals associated in fact although not a legal entity."