Herbert W. LEONARD

v.

SHEARSON LEHMAN/AMERICAN
EXPRESS INC., et al.

Civ. A. No. 86–5808.

United States District Court,
E.D. Pennsylvania.

May 16, 1988.

178

Edward Fackenthal, Henderson Wetherill O'Hey & Horsey, Norristown, Pa., for plaintiff.

C. Clark Hodgson, Jr., David C. Franceski, Jr., Stradley Ronon Stevens & Young, Philadelphia, Pa., Keith R. Dutill, for Shearson Lehman Brothers, Inc. and Peter Von Nessi, Jr.

Howard B. Arber, Hempstead, N.Y., for James F. Brennan & Joseph Ferrari.

### MEMORANDUM

GILES, District Judge.

Herbert W. Leonard has filed suit complaining that a representative of Shearson Lehman/American Express (Shearson Lehman) in its Harrisburg, Pennsylvania branch, and several officers of that firm located in New York City, made material misrepresentations to him upon which he relied.[1] Plaintiff claims that as a result of these misrepresentations he lost $125,000.

These losses were allegedly incurred as a result of plaintiff's participation in an options trading program, entitled "The S & P 100 Index Income Strategy" (the "Strategy"). *See* Complaint, Ex. A. Plaintiff maintained this securities account with defendants between April, 1984 and September, 1986.

Plaintiff alleges that defendants made false representations regarding the Strategy in violation of: Sections 12 and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*, 77q; the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.;* the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.;* Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder; and the Pennsylvania

---

**1.** Plaintiff has not sued his Harrisburg Shearson/Lehman account representative.

Securites Act of 1972, Pa.Stat.Ann., tit. 70, § 1–401 (Purdon 1985). Plaintiff also alleges the common law actions of breach of contract, fraud, breach of fiduciary duty, and negligence.

On November 26, 1986, defendants moved to sever and compel arbitration of plaintiff's state law claims, stay plaintiff's Section 10(b) and Rule 10b–5 claims, and dismiss plaintiff's Securities Act of 1933 claims, Commodity Exchange Act claim, and RICO claim. This court granted defendants' motion on December 19, 1986. On January 2, 1987, plaintiff moved for reconsideration of this court's order. On October 5, 1987, the stay was lifted on the Section 10(b) and Rule 10b–5 claims.

Upon reconsideration of the other claims, I hold that the Securities Act of 1933 claims and the RICO claim were properly dismissed with prejudice. The state-law claims were also properly sent to arbitration. The Commodity Exchange Act may not have been properly dismissed due to a possible fact dispute and the order dismissing that claim will be vacated accordingly.

## I.  SECURITIES ACT OF 1933

Count I of the complaint alleges violations of both Sections 12 and 17 of the Securities Act of 1933. As a matter of law, plaintiff cannot advance either of these claims against defendants.

a.  *Section 12*

Section 12 provides:

> [A]ny person who ... (2) *offers or sells* a security ... by the use of any means or instruments of transportation or communication in interstate commerce ... which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements ... not misleading, shall be liable to *the person purchasing such security from* him....

15 U.S.C. § 77*l*(2) (emphasis added).

■ The third circuit has held that Section 12 is designed solely as a vehicle for a purchaser against his immediate seller. *Collins v. Signetics Corp.*, 605 F.2d 110, 113 (3d Cir.1979). Absent allegations of strict privity between the plaintiff and defendants, or allegations that defendants had control over the seller, plaintiff has no cause of action under Section 12. *See also Kramer v. Scientific Control Corp.*, 452 F.Supp. 812, 814 (E.D.Pa.1978).

■ Plaintiff first contends that a broker is a seller under Section 12(2). I disagree. Plaintiff cites no case law to support his position. In addition, the argument lacks common sense. A broker fields the offers of sellers or purchases stock or options from a seller on behalf of a client. A broker also offers advice to or, if authorized, makes decisions on behalf of a client. To argue that defendants, in their role as brokers, "sold" or "offered" securities to the plaintiff within the meaning of Section 12(2) ignores this basic definition of a broker and is an implausible interpretation of the statute.

Defendants correctly argue that Section 12(2) simply is not intended to remedy a principal-agent dispute such as the one at hand. The statute is intended to redress prospectus or registration statement fraud in a buyer/seller relationship in an initial offering transaction. Defendants aptly observe that plaintiff's "dispute is with the functioning of the options writing strategy, a claim which cannot be brought within, or remedied by, Section 12(2) of the Securities Act." Defendants' Memorandum in Opposition to Motion to Amend or Alter Judgment at 7–8.

Plaintiff next argues that defendants were the seller by reason of their contractual relation between the issuer of the options and the purchaser. Plaintiff states that defendants were "clearing members" or "de facto underwriters" and that this status makes them liable under Section 12(2). An examination of the program literature attached to plaintiff's complaint shows that plaintiff wrote and sold options in return for a premium. *See* Complaint, Ex. A. Plaintiff alleges that Shearson then "closed or otherwise disposed of the puts, calls and straddles which it *purchased for* and *managed in* Shearson's account for Leonard." Amended Complaint, ¶ 20 (em-

phasis added). Shearson was not a seller or a purchaser. As plaintiff's broker, it made purchases and sales for plaintiff's account. As discussed above, a broker is not liable under Section 12(2).

Finally, plaintiff argues that defendants are liable under Section 12(2) for their substantial aid and participation in the sale to Leonard. As discussed above, the third circuit has held that absent privity between the seller and buyer, or some special relationship, such as control over the seller, plaintiff cannot maintain an action under Section 12(2). *Collins*, 605 F.2d at 113. Plaintiff has not alleged that defendants had any control over the seller other than those activities which a broker traditionally performs.

Plaintiff cites a fifth circuit case which held that a broker not passing title to a security can, nevertheless, be a seller for Section 12(2) purposes if the injury to the purchaser flowed directly and proximately from actions of the broker. *See Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680 (5th Cir.1971). The fifth circuit has, however, rejected the strict privity requirements which comprise the law of this circuit. I am not free to move from the third circuit's strict privity requirements towards a standard of "substantial participation."

b. *Section 17*

■ The third circuit has not yet addressed the issue, but this court has previously held that a private right of action cannot be implied under Section 17(a).[2] *See In re Catanella and E.F. Hutton and Co.*, 583 F.Supp. 1388, 1419 (E.D.Pa.1984); *Kimmel v. Peterson*, 565 F.Supp. 476, 483 (E.D.Pa.1983); *Mursau Corp. v. Florida Penn Oil & Gas, Inc.*, 638 F.Supp. 259, 261 (W.D.Pa.1986).

As stated in *Kimmel*, Section 17(a) fails at least two prongs of the four prong test designed to devine Congressional intent un-

der the teaching of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). An implied private right of action under Section 17(a) would be inconsistent with the other sections of the Act and its legislative history, and with other federal securities laws, such as Section 10(b) of the Securities Exchange Act of 1934. In particular, *Kimmel* noted that a private right of action under Section 17(a) would allow plaintiffs to pursue Section 10(b) claims under Section 17(a) and avoid the scienter requirements of Section 10(b). In addition, use of Section 17(a) would overlap Sections 11 and 12 of the 1933 Act and effectively write them out of the statute. *Kimmel*, 656 F.Supp. at 487.

For these reasons, I hold that Section 17(a) does not provide for a private right of action.

## II.  COMMODITIES EXCHANGE ACT

■ Plaintiff's claim under the Commodities Exchange Act was dismissed because it appeared that the complaint did not allege the trading of any commodities, as required under the act. *See* Complaint, Ex. A. The Commodities Exchange Act covers only transactions involving commodities, such as wheat, cotton, rice, corn, oats, etc. 7 U.S.C. Section 2.

However, now plaintiff asserts that the claim should not have been dismissed because the defendants may have been speculating in "stock index futures", which may have been designated as commodities, rather than "stock index options," which, in turn, may have been designated securities. 7 U.S.C. Section 2a. Plaintiff alleges that the "puts, calls and straddles Shearson sold Leonard and wrote for his account were contracts of sale for future delivery of broad-based stock indices constituting stock index futures." Amended Complaint, ¶ 26. Defendants counter that plaintiff has not plead facts sufficient to bring his claim within the statutory requirements of the Commodities Exchange Act.

---

**2.** Section 17(a) prohibits the use of interstate commerce for the purpose of fraud or deceit. Section 17(b) prohibits the use of interstate commerce for the purpose of offering a security for sale. We need only address Section 17(a)

because the complaint fails to allege facts sufficient to bring a claim under Section 17(b). The complaint does not allege that defendants offered any securities for sale, but only that they defrauded plaintiff in their role as brokers.

However, plaintiff's allegations do raise the issue of whether index futures were traded. An issue of material fact exists and the claim cannot be dismissed on this record. *See* 7 U.S.C. Section 2a. Accordingly, plaintiff's motion for reconsideration is granted, and that part of the order of December 19, 1986 dismissing Count III with prejudice is vacated.

## III. RICO

Plaintiff's amended complaint does not specify whether plaintiff brings his RICO claim under Section 1962(a), 1962(b), or 1962(c). Therefore, the court must consider all of the possible claims.

### a. *Section 1962(a)*

Section 1962(a) provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

■ In order to state a claim, plaintiff must plead an injury which he suffered as a result of a violation of § 1962(a). *Gilbert v. Prudential–Bache Securities, Inc.,* 643 F.Supp. 107, 109 (E.D.Pa.1986). In the present case, it is clear that plaintiff did not suffer any injury under § 1962(a). Plaintiff's alleged injury was caused by the alleged pattern of racketeering activities, including the development and promotion of the strategy and the securities transactions thereunder, but "whether the defendant did or did not invest the proceeds in a business affecting commerce cannot have been causally related to any injury to [plaintiff]." *Gilbert,* 643 F.Supp. at 109. Therefore, plaintiff lacks standing to sue under § 1962(a).

### b. *Section 1962(b)*

■ Section 1962(b) is not applicable to the case at hand. Section 1962(b) provides:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Plaintiff has not alleged that either Shearson Lehman or the individual defendants have, through a pattern of racketeering, acquired or maintained control of Shearson Lehman. Even if plaintiff were to so allege, he would not have standing to sue. As under § 1962(a), plaintiff has not suffered any injury as a result of a § 1962(b) violation.

### c. *Section 1962(c)*

■ Section 1962(c) provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

The statute requires that the "person" must be employed by or associated with an "enterprise." The "person" must be a distinct entity from the "enterprise." *See B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628, 633–634 (3d Cir.1984). In addition, the RICO "person" is the active wrongdoer, while the RICO "enterprise" is the passive instrumentality through which the "person" performs the predicate acts. *See Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349, 1359 (3d Cir.1987). As Judge Newcomer stated in *Salvador v. Mazzocone,* 686 F.Supp. 528, 530 (E.D.Pa.1987),

Section 1962(c) expressly states "[i]t shall be unlawful for *any person* em-

ployed by or associated with any enterprise" to conduct that enterprise's affairs through racketeering. (Emphasis added). That section by its terms does not make it unlawful for an enterprise to be used as an instrument of racketeering. Consequently, only a "person" can violate the provisions of § 1962(c).

Plaintiff alleges that Shearson Lehman is the "enterprise" employing the individual defendants who are the "persons" who committed the predicate acts. Plaintiff further contends that the individual defendants are "controlled persons," liable for having committed the predicate acts, while Shearson Lehman is the "controlling person," liable for "knowingly receiving the proceeds of the predicate acts." Plaintiff's Brief in Answer to Defendants' Motions to Sever and Compel Arbitration at 20.

These allegations do not fit under the requirements of Section 1962(c). First, Shearson Lehman cannot be held liable in the role of "enterprise." As discussed above, only a "person" can be held liable under the provisions of 1962(c). Defendant Shearson could be held liable only if it, through a pattern of racketeering, conducted the affairs of an enterprise other than itself. No such showing has been and cannot be made. It was clearly the business of the defendant Shearson Lehman which was being conducted through the alleged pattern of racketeering activity. There is no separately identifiable business. *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107 (E.D.Pa.1986). Plaintiff could only proceed against the individual defendants whom he has alleged to be the "persons" under the statute.

However, plaintiff's claims against the individual defendants are also insufficient. Plaintiff alleged that the "enterprise," Shearson Lehman, was the "controlling person" and that individual defendants were the "controlled persons." This is the opposite situation of what § 1962(c) is designed to cover. Section 1962 was "intended to govern only those instances in which an 'innocent' or 'passive' corporation is victimized by RICO 'persons,' and either drained of its own money or used as a passive tool to extract money from third

parties." *Petro–Tech, Inc.*, 824 F.2d at 1359 (citing *Hirsch*, 751 F.2d at 633–634).

Plaintiff's arguments that Shearson is liable under the theory of *respondeat superior* and for aiding and abetting the individual defendants are also without merit. The third circuit has held that *respondeat superior* and aiding and abetting liability would "disrupt the intended operation of § 1962(c), by making the § 1962(c) enterprise—the victim ... of the racketeering activity—liable." *Petro–Tech*, 824 F.2d at 1359. To hold otherwise "would be to read the enterprise requirement out of the statute entirely, whenever a corporate defendant is involved." *Gilbert*, 643 F.Supp. at 109.

### d. *Section 1962(d)*

Finally, plaintiff has alleged a conspiracy between Shearson (the "controlling persons") and the individual defendants, (the "controlled persons") under Section 1962(d). Amended Complaint, ¶ 31. Section 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). A claim cannot be made under § 1962(d) in the absence of a viable claim under § 1962(a), (b), or (c). Since no claim has been made under any of those sections in the present case, the § 1962(d) claim also fails.

### IV. ARBITRATION

#### a. *Federal Claims*

This court has, by order of October 5, 1987, allowed plaintiff to bring his Section 10(b) and Rule 10b–5 claims in Count II of the complaint. The "Customer's Agreement" states:

Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect....

Motion of Defendants to Sever and Compel Arbitration, Ex. A. This is the only portion of the agreement that defendants quote in their memorandum to support their motion to sever and compel arbitration. However, the customer's agreement goes on to say:

> This agreement to arbitrate *does not apply* to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws.

Defendant's Motion, Ex. A (emphasis added). Plainly read, this agreement does not require arbitration of either the Section 10(b) or the Rule 10b–5 claims.

### b. *State–Law Claims*

▮ Plaintiff argues that this court should not compel arbitration of the state-law claims since the court will assert jurisdiction over the federal-law claims. Plaintiff contends that all the claims should be tried together in order to promote efficiency and to prevent any arbitration preceeding the federal proceeding from having a preclusive effect on the federal claims. The Supreme Court has held that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims, when one party files a motion to compel, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985).

Under the Federal Arbitration Act, 9 U.S.C. §§ 1–14, written agreements to arbitrate controversies arising out of a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court concluded that the act leaves no place for discretion by a district court and that compelling arbitration of state-law claims "protects the contractual rights of the parties and their rights under the Arbitration Act." *Id.*, 470 U.S. at 221, 105 S.Ct. at 1243. Therefore, plaintiff's state-law claims must be arbitrated.

An appropriate order follows.

### ORDER

AND NOW, this 16th day of May, 1988, it is hereby ORDERED that plaintiff's motion for reconsideration of this court's order of December 19, 1987, is GRANTED with respect to Count III of the amended complaint only. The order dismissing plaintiff's Count III with prejudice is VACATED.