Cornelius K. SUTTON, Plaintiff,

v.

SHEARSON HAYDEN STONE, INC., Lee J. Beattie and Andre Pappas, Defendants.

No. 77 Civ. 0486 (KTD).

United States District Court, S. D. New York.

March 13, 1980.

Snow, Becker, Kroll, Klaris & Krauss, New York City, for plaintiff; Charles Snow, New York City, of counsel.

Willkie Farr & Gallagher, New York City, for defendants Shearson Hayden Stone, Inc. and Lee J. Beattie; William T. Sullivan, Armando T. Belly, Sally Cohen Swift, New York City; of counsel.

Merrill J. Chapman, New York City, for defendant; Andre Pappas, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Cornelius K. Sutton, Jr., commenced this action in February, 1977, against the brokerage firm of Shearson Hayden Stone, Inc. [hereinafter referred to as "Shearson"], three of its brokers, Stanley Katz, Andre Pappas and Robert Nash, as well as one of Shearson's branch managers, Lee Beattie, charging them with multiple violations of the federal securities laws. Defendants filed timely answers and discovery proceeded apace.

Thereafter, in May, 1979, a pre-trial conference was held before me during which counsel revealed that the action would be discontinued with respect to Messrs. Katz, Nash and Beattie. I directed that the complaint be amended in the pre-trial order to reflect these recent developments.

In June, plaintiff served his proposed pre-trial order which accurately reflected the discontinuance with respect to Katz, Nash and Beattie. In addition, plaintiff apparently abandoned his quest for punitive damages which were sought in the original complaint. Before the pre-trial order was entered, however, the plaintiff requested, and was granted, leave to amend his complaint to recite additional claims for relief. And, based upon "newly discovered evidence", the amended complaint alleged a new claim

against Lee Beattie against whom the action was previously, albeit informally, discontinued. Plaintiff also renewed his request for punitive damages.

As amended, plaintiff's complaint contains four separate claims for relief. The facts underlying these claims are as follows.

In 1971, the plaintiff opened a non-discretionary account with Shearson in order to participate in the firm's widely publicized "Uncommon Values in Common Stock" portfolio. The account was apparently handled from its inception through November, 1972, by Stanley Katz, one of Shearson's registered representatives. After Katz left Shearson's employ in 1972, the account was handled by Andre Pappas, an account representative recommended to plaintiff by Lee Beattie, Shearson's branch manager.

The complaint charges that during the time Pappas handled plaintiff's account, from November, 1972 through November, 1973, despite substantial investments of capital, the net value of his account dropped approximately $100,000. Plaintiff reasons that this drastic depreciation was the direct result of Pappas' general mishandling of the account as well as his engaging in unauthorized, unsuitable and excessive trading while generating commissions for himself in excess of $13,000.

In addition, plaintiff recently discovered that while Pappas was handling his account at Shearson, numerous customer complaints had been filed against him. These complaints charged Pappas with mishandling brokerage accounts and engaging in unauthorized trades. As a result of these complaints, Shearson was forced to enter into monetary settlements totaling $34,500 with the disgruntled customers.

During this same period, Pappas had incurred a $50,200 debit in his personal trading account at Shearson. This debt, together with the amount paid by Shearson to its irate customers, amounted to $84,700. This is the precise amount recited in a promissory note dated May, 1973, which Pappas signed in favor of Shearson. Pappas was informed prior to execution of the note that he would be paid a base salary of $3,500 per month and that any commissions earned over that amount would be applied against the promissory note.

Plaintiff concludes that Pappas' conduct while handling his account at Shearson constituted a violation of federal securities laws. In addition, plaintiff charges that Shearson's failure to disclose the numerous customer complaints filed against Pappas amounted to a material omission in connection with the purchase or sale of a security in violation of § 10(b) and Rule 10b–5.

More particularly, plaintiff's first claim charges a 10(b) violation based upon the alleged activities of Pappas which included churning, unsuitable and unauthorized trading. Plaintiff's second and third claims in essence restate his first claim but seek exemplary and punitive damages for the alleged violations.

Finally, plaintiff's fourth claim is directed to the defendant Beattie and charges that although aware of Pappas' fraudulent conduct he permitted the broker to continue this course of conduct to the detriment of plaintiff.

Defendants now seek to dismiss counts two, three and four of plaintiff's amended complaint on the ground that each fails to state a claim upon which relief can be granted. Defendants also seek to dismiss the entire complaint as to defendant Beattie on the dual grounds that plaintiff failed to effect timely service upon Beattie and plaintiff has failed to diligently prosecute the instant action against him. And, inasmuch as defendants do not challenge count 1 of plaintiff's amended complaint, they seek leave to file a responsive pleading thereto within a reasonable time.

Defendants' attack upon plaintiff's complaint is two-pronged. First, defendants urge that although Pappas may have engaged in certain questionable investments while handling plaintiff's account, the plaintiff was aware of this conduct and yet, he continued to trade through Pappas thereafter. Defendants reason that plaintiff is either estopped from relying upon this conduct to allege a securities violation

or has waived any violations thereof and assumed all financial risks flowing therefrom.

Defendants also argue that Shearson's failure to disclose the customer complaints filed against Pappas is not a material omission and, in any event, was not the proximate cause of any losses sustained by plaintiff.

■ Before a complaint is dismissed, it must be demonstrated beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). Under such an analysis, each of the challenged claims is sufficient to withstand the instant motion.

■ Defendants rely upon certain testimony elicited at plaintiff's deposition as conclusive evidence that plaintiff was aware of Pappas' conduct and yet continued to permit him to handle his account. Having reviewed the deposition testimony, it is not at all clear that plaintiff was aware of the precise nature of Pappas' conduct or the extent of his alleged mishandling of the account. Indeed, the testimony is quite equivocal on this point.

Moreover, even if I were willing to accept defendants' interpretation of this testimony, it would not warrant dismissal of the claims in issue. Rather, it is significant only insofar as it sets up plaintiff's knowledge as a possible defense to the alleged violations. However, this is an issue properly left to the trier of fact. I am not prepared to say at this juncture that even if plaintiff knew of Pappas' misconduct and continued to trade through him, this necessarily constituted an absolute waiver of any claims which accrued to him. Certainly, plaintiff should be given the opportunity to present evidence to support his claims, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), as should defendants be permitted to establish the defenses of waiver or estoppel.

■ Turning next to Shearson's failure to inform plaintiff that certain customer complaints were filed against Pappas, an identical result obtains. It is not at all clear whether plaintiff will be able to demonstrate that this omission was material. However, plaintiff should be given the opportunity to present the question of materiality to the trier of fact.

Indeed, if I were to impute to plaintiff knowledge of the alleged mishandling of his account at the hands of Pappas, as urged by defendants, these customer complaints may very well reach the threshold of materiality. To be sure, if plaintiff had his own suspicions that his account was being mishandled, these other customer complaints would have served only to bolster these fears and may have proved to be the catalyst necessary to prompt plaintiff to remove his account from Pappas' control. At any rate, to say that under no circumstances could plaintiff prove this to be a material omission is untenable.

Similarly, the question of proximate cause is sufficiently presented to withstand the instant motion. It is apparent that given plaintiff's apparent suspicions with respect to the conduct of Pappas, he could demonstrate that Shearson's failure to disclose these additional customer complaints proximately caused the damage sustained in his portfolio.

■ Defendants' final argument for dismissal of counts two, three and four of plaintiff's amended complaint is that finding a violation in the instant case would not advance the policies underlying § 10(b) and Rule 10b–5. In particular, defendants urge that § 10(b) and Rule 10b–5 are intended to "protect investors" by requiring full disclosure in connection with the purchase or sale of securities. They reason that by requiring Shearson to disclose to its customers, the complaints filed by fellow customers against its brokers would not advance this purpose a jot. I disagree.

It is true that full disclosure is at the very heart of § 10(b) and Rule 10b–5 and that they were intended to protect the investor from the harsh common law rule of *caveat emptor*. And, while it may be too

burdensome to impose a duty upon a brokerage firm to disclose each customer complaint registered against one of its representatives, this is hardly the situation at bar. On the contrary, here we are dealing with a brokerage firm which after investigation entered into monetary settlements with its customers for the alleged wrongdoing of one of its brokers and required the broker to execute a promissory note in its favor for the amounts paid in settlement. Moreover, the firm permitted the broker to continue to handle individual accounts although it required that all of his commissions earned at the firm were to be applied against the note.

It would appear to all but the most naive observer that the execution of the promissory note constituted an extra-judicial admission by the broker of some wrongdoing. To be sure, if this were not the case then Pappas' promise to reimburse Shearson for the $34,500 paid in settlement was not supported by consideration. Indeed, if the settlements were not the direct result of Pappas' conduct, then he was not indebted to Shearson for the monies paid in settlement. Thus, absent an implicit admission of wrongdoing by Pappas, giving rise to a concomitant right of reimbursement in Shearson, the promise of repayment was gratuitous and unenforceable. This, however, was not the case.

There was a separate action brought by Shearson against Pappas seeking to recover the amount due on the promissory note. This action, commenced in New York State Supreme Court, was the subject of a four-day bench trial. The Court, per Williams, J., made certain findings of fact which are particularly germane to the instant action. They are as follows:

In February, 1973, certain customers of plaintiff, whose accounts were managed by defendant, lodged complaints that their accounts had been mishandled and that defendant had undertaken unauthorized trades which resulted in monetary losses. The customers, complaining at various times during 1973, included Dr. Goodman, Mr. Lukas (defendant's counsel herein), Mr. Carlton, Mr. Schwartz and Mr. Aronowitz.

Upon receipt of these complaints, investigations were commenced at plaintiff's branch office and by its legal department to determine, first, the legitimacy of each complaint and second, what, if any, action should be taken to resolve it. The complaints were discussed with the customers, the transactions which gave rise to the losses were reviewed, the defendant was informed of each complaint and was afforded the opportunity to answer each allegation. The defendant was informed that legitimate customer complaints could result in a monetary settlement whereby plaintiff would settle with the customer after first determining that the firm was responsible for the loss by virtue of defendant's conduct. Defendant was further advised that he would be held personally liable for these settlements.

When the investigation of certain complaints was concluded, plaintiff computed settlement figures and advised the defendant of these computations prior to any actual settlement. Thereafter, plaintiff made arrangements to pay several customers who filed legitimate complaints. Prior to any settlement payments, the defendant was again advised that since he was responsible for the losses incurred, he would be obligated to reimburse plaintiff for the full amount of the settlements presently being made and any settlements subsequently made concerning outstanding complaints.

Furthermore, during this period of investigation, it was also discovered that the defendant had incurred a $50,200 debit in his own personal trading account.

As of May 9, 1973, the date of the preparation of the note that is the subject of this lawsuit, plaintiff had settled the following complaints for the indicated amounts, with defendant's knowledge and consent: Dr. Goodman, $24,500; Mr. Lukas, $7,500 and Mr. Eisenberg, $2,500 —for a total of $34,500. These settlements together with the $50,200 debit in defendant's personal trading account rep-

resented an indebtedness due from defendant to plaintiff in the amount of $84,700. In order to secure payment of this debt, plaintiff prepared a promissory note in said sum for signature by defendant.

.    .    .    .    .

The promissory note, in relevant part states the following:

The undersigned, Andre Pappas, acknowledges and affirms that he is indebted to Shearson Hammill & Co., Incorporated in the amount of Eighty Four Thousand Seven Hundred Dollars.

For and in consideration of Shearson Hammill and Co. Incorporated not taking any legal action to effect collection of this indebtedness, the undersigned, Andre Pappas, hereby promises to pay to the order of Shearson Hammill and Co. Incorporated, the sum of Eighty Four Thousand Seven Hundred Dollars, due and payable on demand, together with interest at the rate of 7 percent per annum payable from the date hereof.

Justice Williams went on to find that:

Aside from the amount of the indebtedness, the only other aspect of the note in question is plaintiff's consideration for defendant's reciprocal promise to pay. The consideration, as recited in the note, was forbearance from suit.

It has long been recognized that a bargained for promise to forbear from commencing a lawsuit to collect a debt is good and valuable consideration for a reciprocal promise to pay that indebtedness. *Strong v. Sheffield*, 144 N.Y. 392 [, 39 N.E. 330] (1894).

As stated in Williston On Contracts:

Just as a promisor may make an agreement for acts or promises to act, so may he bargain for forbearances or promises to forbear. Forbearance from exercising a right or doing an act which one has a right to do is legal consideration.

Plaintiff, by agreement, made a promise to forbear the collection of the debt owed to it by defendant, and forbearance, pursuant to that promise for a reasonable time, constitutes consideration sufficient to support defendant's promise and obligation to pay the debt. Plaintiff gave up a legal right by its promise, at least for a reasonable length of time.

Furthermore, quite apart from this implicit admission of wrongdoing, it is evident that under the circumstances, the sole reason Shearson continued to employ Pappas was to facilitate the collection of its promissory note. To be sure, Shearson had a vested interest in Pappas' continued employment.

In addition, it is certainly likely that a jury could find that given the repayment arrangement imposed upon Pappas by Shearson, Pappas had a greater incentive to churn the accounts of his clients in order to generate commissions, then to work for the improvement of a given portfolio. Under these circumstances, since Shearson provided Pappas not only with the motive but the opportunity to churn the accounts of his clients, it is not unreasonable to impose the duty of disclosure upon Shearson.

At any rate, I am convinced that at this juncture plaintiff has stated claims sufficient to withstand the instant motion and the policies underlying § 10(b) and Rule 10b–5 would possibly be served if the facts are as plaintiff has alleged them to be.

■ With respect to those claims now pressed against Beattie, I note that the action against him was never formally discontinued. More importantly, however, despite the absence of a formal discontinuance, the newly discovered evidence against Beattie, which resulted from the decision of Justice Williams in Shearson's action against Pappas, is sufficient to support the amended claims. And, although service does come late in this action, under all the attendant facts and circumstances there has not been such a failure to prosecute as would warrant a dismissal.

■ I turn next to the question of punitive damages. Punitive damages are generally not recoverable under § 10(b) of the Exchange Act. *Brynes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303, 1313 (2d Cir.

1977). *See also* Peloso, *Damages*, The Review of Securities Regulation, May 19, 1979, at 932 [hereinafter "Damages"]. However, where a complaint states pendant claims for common law fraud, punitive damages, as provided for under the applicable state law, are recoverable. *Damages, supra*, at 932 & n.40.

 Plaintiff's amended complaint does allege facts sufficient to state a claim for common law fraud and since, in his jurisdictional allegations, he does rely upon the doctrine of pendent jurisdiction, the request for punitive damages must stand. Whether plaintiff will be able to prove facts sufficient to justify an award of punitive damages is a question properly left until such time that all the evidence is before the Court.

Finally, with respect to defendants' request to file an amended responsive pleading as to count 1, it is granted.

Accordingly, defendants' motions to dismiss are denied and its request to file a responsive pleading as to count 1 of plaintiff's amended complaint within ten (10) days hereof is granted.

So ordered.