**John Carl HARTMAN, et al., Plaintiffs,**

v.

**Meyer BLINDER, et al., Defendants.**

**Civ. A. No. 86–513 (MTB).**

United States District Court,
D. New Jersey,
Civil Division.

Oct. 30, 1987.

Robert L. Ritter, Cole, Schotz, Bernstein Meisel & Forman, Hackensack, N.J., Stanley J. Parzen, Mayer, Brown & Platt, Thomas D. Rafter, Asst. Firm Counsel, Chicago, Ill., for Alexander Grant & Co.

Sheppard A. Guryan, Lasser, Hockman, Marcus, Guryan & Kuskin, Roseland, N.J., for Lerner, Harris & Pearce, Michael D. Harris, Allen M. Lerner and Robert Wayne Pearce.

Seth Taube, McCarter & English, Newark, N.J., for defendants, Mamatech Corp., Henry Pennypacker, Gerald H. Stein, Raymond K. Sisler, Harold Baum and Rose Kushner.

Scott J. Sheldon, Carpenter, Bennett & Morrissey, Newark, N.J., for Blinder Robinson & Co., Inc., Meyer Blinder and Anita Goldberg.

G. Martin Meyers, Meyers & Goldthwaite, Denville, N.J., for plaintiffs.

BARRY, District Judge.

Plaintiffs, four individual purchasers of the stock of the defendant Mamatech Corporation, bring this action against Mamatech; the underwriter and broker of the securities, Blinder, Robinson & Co., Inc. ("Blinder, Robinson"); the law firm and accounting firm that participated in the preparation of the prospectus; and various individuals, alleging securities fraud, liability for violation of civil RICO,[1] and various pendent state law claims. The accounting firm, Alexander Grant & Co. ("Alexander Grant"), now moves to dismiss under Federal Rules of Civil Procedure 9 and 12(b)(6).

For the reasons that follow, that motion will be granted.

The facts as alleged in the complaint are relatively uncomplicated. Although their stories differ somewhat in detail, each of the plaintiffs relate the same tale. At some point, each was telephoned by defendant Goldberg, an employee of Blinder, Robinson, and convinced by her that the stock of the Mamatech corporation, then trading around a dollar a share, would soon skyrocket to over $4.00 a share when the general public became aware of "insider information" to which Goldberg was privy. Based upon these representations, each of the plaintiffs bought significant stakes in Mamatech only to see their money lost as the price of the stock plummeted.

Whatever the merits of that aspect of this case, there is more. Assuming for a moment that Goldberg did engage in activity violative of the securities laws, it would not be the first time that an employee of Blinder, Robinson has rubbed up against securities regulators. In fact, Blinder, Robinson has a somewhat spotty record with the Securities and Exchange Commission ("SEC"), the National Association of Securities Dealers ("NASD"), and various state regulatory bodies. According to the complaint,[2] Blinder, Robinson has been the subject of cease and desist orders, sanctions, or injunctions in at least eleven different states as well as enforcement actions resulting in censure, fines, and injunctions by the SEC and NASD. When the prospectus offering Mamatech stock to the public was issued, it failed to reveal Blinder, Robinson's various brushes with the nation's securities regulators and the Honorable John W. Bissell, in deciding earlier filed motions to dismiss in this case, has already held that this failure was a "material omission for purposes of stating a claim under 10(b) and Rule 10b–5."

Alexander Grant, the accounting firm admittedly responsible for preparing the financial statements used in the offering

---

**1.** Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq.

**2.** On a motion to dismiss, the court will accept the well pleaded facts of the complaint as true. *McKnight v. Southeastern Pennsylvania Transp. Authority*, 583 F.2d 1229 (3d Cir.1978).

statement, now moves to dismiss on various grounds. I hold that because plaintiffs' have failed to allege facts, which if proven, could lead to the conclusion that plaintiffs' loss was caused by Alexander Grant's failure to disclose Blinder, Robinson's past misdeeds, the securities claims against the accountant must be dismissed. I further hold that plaintiffs' state law claims also fail to plead causation adequately. Finally, I hold that plaintiffs' claim under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act must also fall.

### Section 10 and Rule 10b–5

 Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, makes it unlawful to "employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention" of any rule promulgated by the SEC designed to protect the investing public. Rule 10b–5, in turn, makes it unlawful: (1) "To employ any device, scheme, or artifice to defraud," (2) "To make any untrue statement of a material fact" or to omit to state a material fact so that the statements made "in light of the circumstances," are misleading, and (3) "To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

This tort, although statutory in nature, sounds in the common law of fraud and deceit and retains, in a modified form, the common law elements of duty, breach, causation, and damage. *See Huddleston v. Herman & MacLean*, 640 F.2d 534, 547 (5th Cir.1981) (10b–5 claim derived from common law action for deceit), *modified on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). More precisely, these elements are incorporated into the following test. In order to make out a claim under 10b–5, a plaintiff must allege (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused his injury. *Huddleston*, 640 F.2d at 543. In the instant case, as indicated previously, Judge Bissell has already held that a material omission was made with respect to the failure to disclose Blinder, Robinson's previous misdeeds. This holding resolves, in a general sense, the breach component contained in elements (1) and (2) above, and after *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741, *reh'g denied*, 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 and 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972), satisfies the causation-in-fact component found in elements (2) and (4). *Affiliated Ute*, 406 U.S. at 153–54, 92 S.Ct. at 1472 (fact that omission is material in the sense that a reasonable investor might have considered it important in the making of this decision satisfies elements of reliance and "causation in fact").

 Defendant asserts, however, that two important pieces of plaintiffs' puzzle are still missing: (a) that even assuming that a breach has occurred that breach was not of any duty owed by Alexander Grant to plaintiffs and (b) that, at best, plaintiff has merely alleged "transaction", and not "loss", causation. The absence of either, defendant argues, makes plaintiffs' claims defective as a matter of law. Assuming, without deciding, that defendant owed some duty to plaintiffs,[3] I now hold that

---

**3.** In order to be held directly liable under 10b–5 the defendant, here Alexander Grant, must have a duty to disclose the omitted fact. *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987). The duty to disclose arises by operation of law and is imposed upon those who have "special obligations, [such] as ... accountants, brokers, or other experts, depending on the circumstances of the case." *Woodward v. Metro Bank*, 522 F.2d 84, 97 n. 28 (5th Cir.1975). Thus, the issue presented here is whether or not an accountant who participates in the preparation of an offering prospectus has a duty to disclose the underwriter-broker's litigation history. It appears to this court that as a matter of direct liability, as opposed to aiding and abetting liability, no such duty exists. In determining the scope of a duty to disclose a court should consider:

the relationship between the plaintiff and defendant, the parties relative access to the information to be disclosed, the benefit derived by the defendant from the purchase or sale, defendant's awareness of plaintiff's reliance on defendant in making its investment deci-

plaintiffs have failed to allege sufficient facts to state a claim that plaintiffs' losses were proximately caused by defendant's alleged breach. Accordingly, plaintiffs' securities claims against Alexander Grant must be dismissed.

*Reliance, Transaction Causation, and Loss Causation*

■ As noted previously, a 10b–5 claim retains much of its common law flavor. Specifically, like the common law of deceit, it is necessary for a plaintiff to plead reliance on the defendant's fraudulent conduct. Where the alleged fraud is an affirmative misrepresentation of fact this element of reliance is easily proven. The plaintiff need only allege that he relied upon the misrepresentation in making the investment decision. Difficulties arise, however, when the alleged fraud involves, as it does in this case with regard to the allegations against Alexander Grant, an omission of fact. Obviously, a question of what a plaintiff would have done if a fact had been disclosed is more difficult than what a plaintiff actually did in reaction to an affirmative statement.

■ This difficulty in alleging reliance in an omission case was resolved by the Supreme Court in *Affiliated Ute.* In that case, the Court held that a plaintiff in an omission case could, at least as an initial matter,[4] meet the reliance requirement of a 10b–5 action by demonstrating that the omitted fact was "material in the sense that a reasonable investor might have considered [it] important in the making of [his] decision ..." *Affiliated Ute*, 406 U.S. at 153–54, 92 S.Ct. at 1472. This showing, the Court held, "establish[ed] the requisite element of causation in fact." *Id.* at 154, 92 S.Ct. at 1472. Thus, by equating materiality with reliance a plaintiff in an omission case could overcome the common law hurdle of reliance.

■ Some courts have noted this relationship between a material omission and causation in general in order to hold that the proximate cause element of a 10b–5 claim has been sufficiently alleged. Illustrative is *Sutton v. Shearson Hayden Stone, Inc.*, 490 F.Supp. 98 (S.D.N.Y.1980). In *Sutton*, the defendant asserted that its failure to inform a customer about complaints filed against the salesman in charge of plaintiff's account was not material, and even if material, was not the proximate cause of plaintiff's loss. In rejecting this defense the court stated:

> Indeed, if I were to impute to plaintiff knowledge of the alleged mishandling of

sion, and defendant's role in initiating the purchase or sale.

*Rudolph*, 800 F.2d at 1043.

Applying this test to the allegations of the complaint, this court would be compelled to conclude that the accountant's role in these transactions does not encompass the broad duty advanced by plaintiffs to act as watchdog over the professional activities of others. First, Alexander Grant played little or no role in initiating the sales to plaintiffs, nor does it appear that it received, unlike Blinder, Robinson which apparently held warrants, any special benefit other than professional fees from the sales. Moreover, the relationship between plaintiffs and defendant, one created entirely by the certified statement, suggests that a reasonable investor would rely on the accountant only to the extent that he or she would expect those statements to be accurate in the financial sense. Finally, there is nothing in the record to suggest that Alexander Grant had any special access to Blinder, Robinson's besmirched past, facts just as available to the public at large.

The question of aiding and abetting liability is a much closer one. In order to be liable as an aider and abettor under 10b–5, the actor must have actual knowledge of the violation and have knowingly and substantially participated in the wrongdoing. *Monsen v. Consolidated Dressed Beef Company, Inc.*, 579 F.2d 793 (3d Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). While plaintiffs do aver knowledge and while it could be argued that an accountant who supplies otherwise accurate information to a prospectus the accountant otherwise knows to be false "substantially" contributes to the fraud of another, I need not address this issue because of my disposition of defendant's motion on the issue of causation. Similarly, I need not address the issue of plaintiffs' alleged failure to meet the specificity requirements of Fed.R.Civ. P. 9 because of my disposition under Fed.R.Civ. P. 12(b)(6).

4. *Affiliated Ute* merely creates a rebuttable presumption that reliance occurred. A defendant may overcome the presumption by proving that even if the omitted fact were disclosed plaintiff would have acted in a similar fashion. *Rifkin v. Crow*, 574 F.2d 256 (5th Cir.1978).

his account at the hands of Pappas, as urged by defendant, these customer complaints may very well reach the threshold of materiality. To be sure, if plaintiff had his own suspicions that his account was being mishandled, these other customer complaints would have served only to bolster these fears *and may have proved to be the catalyst necessary to prompt plaintiff to remove his account from Pappas' control.* At any rate, to say that under no circumstances could plaintiff prove this to be a material omission is untenable.

Similarly, the question of proximate cause is sufficiently presented to withstand the instant motion. It is apparent that given plaintiff's apparent suspicions with respect to the conduct of Pappas, he could demonstrate that Shearson's failure to disclose these additional customer complaints proximately caused the damage sustained in his portfolio.

*Sutton,* 490 F.Supp. at 101 (emphasis added).

Of course, the *Sutton* court's analysis of the material nature of the omission is unquestionably correct. However, it is also clear that the *Sutton* court equated "materiality" with plaintiff's obligation to show proximate cause in the sense that if plaintiff had "removed his account" from the salesman's control the harm would not have occurred. Subsequent decisions have argued that such an equation demonstrates an unsophisticated view of the causation element. The leading case is *Huddleston,* 640 F.2d 534.

In *Huddleston,* a jury had found that a prospectus had failed to disclose the true cost of building a speedway. In reversing the judgment entered after the jury verdict, the Court of Appeals for the Fifth Circuit held that the district court had incorrectly charged the jury on the issue of causation:

> The district court compounded its failure to submit the reliance issue to the jury by failing also to submit the question of causation. Causation is related to but

distinct from reliance. Reliance is a *causa sine qua non,* a type of "but for" requirement: had the investor known the truth he would not have acted. Causation requires one further step in the analysis: even if the investor would not otherwise have acted, was the misrepresented fact a *proximate* cause of the loss? ... The plaintiff must prove not only that, had he known the truth, he would have acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss. The causation requirement is satisfied in a Rule 10b–5 case only if the misrepresentation touches upon the reasons for the investment's decline in value. If the investment decision is induced by misstatements or omissions that are material and that were relied on by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted.

*Huddleston,* 640 F.2d at 549 (citations and footnote omitted; emphasis in original). Stated in other terms, the distinction made in *Huddleston* is one between "transaction causation" and "loss causation"—just because an omission does not prevent a transaction, it does not necessarily follow that the omission is in any way proximately related to the ultimate loss. *See Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 n. 23 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). Therefore, of the two, transaction causation is the one analogous to reliance and is the same showing that gives rise to the presumption of causation in fact mandated by *Affiliated Ute.* However, in an omission case, a showing of materiality merely establishes but-for causation. A plaintiff must still prove that there is a sufficiently direct causal link between the omission, and the economic loss.

With one notable exception,[5] the *Huddleston* analysis has been the trend. Despite

---

**5.** In *Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 708 (2d Cir.), *cert. denied,* 449 U.S.

1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980), the Court of Appeals for the Second Circuit, in an

the fact that *Huddleston* was not decided in the pleading stage, I now join those courts which interpret *Huddleston* to require a plaintiff to plead not only reliance but also loss causation.[6] In *In re Catanella and E.F. Hutton and Co., Inc. Securities Litigation,* 583 F.Supp. 1388 (E.D.Pa. 1984), a case factually similar to the case at bar, plaintiffs alleged that the defendants' failure to inform them that the salesman handling their account had been previously found to have violated the securities laws was a material omission for the purposes of 10b–5. While the court accepted that proposition, it also found that plaintiff had merely alleged transaction causation. In the court's own words *"[b]ut for* the omission, plaintiffs would not have employed Catanella as their broker in the first place." *In re Catanella,* 583 F.Supp. at 1415 (emphasis in original). Left unresolved because it had not been pled was the causal connection between the failure to reveal Catanella's previous lawsuits and the stocks' market declines. Without such an assertion having a basis in fact, plaintiff had not stated a claim. *Id.*

■■■ That analysis applies with equal force to the facts of this case. A close examination of plaintiffs' complaint and their brief in opposition reveals that plaintiffs, at least in relation to the fraud involving the failure to properly characterize Blinder, Robinson, can only allege transaction causation.[7] This fact becomes crystal clear when one compares the other allegations of fraud in this case. Without decid-

ing the issue, I note the much closer connection between the allegations of fraud lodged at defendant Goldberg regarding "insider information" and plaintiffs' loss. Assuming that the price of Mamatech stock fell because the marketplace made rational decisions about the price of the stock and concluded that it was *overvalued,* Goldberg's assertion to plaintiffs that the stock was in fact *undervalued* because the market lacked information to properly evaluate the price of the stock is directly linked to the cause of the fall of the price of the stock. Because there is no similar allegation regarding the alleged fraud committed by Alexander Grant, the counts against it must be dismissed.

The requirement that plaintiffs allege loss causation should not be construed as an overly technical pleading error. The rule serves a much greater purpose than that. As Judge Giles noted in *In re Catanella,* a rule which ignores the distinction between loss causation and transaction causation would transform the defendant into an insurer of the stock's performance. Such a clear deviation from accepted principles of proximate causation is, outside of strict liability, for the legislature and not for the judiciary. Nor should it be forgotten, as the foregoing discussion regarding the other allegations of fraud in this case should make clear, that plaintiffs are not without a remedy against those entities and individuals whose acts are fairly linked to the suffered harm. *In re Catanella,* 583 F.Supp. at 1417 n. 42 (ruling on loss

---

opinion before *Huddleston,* while recognizing the distinction between transaction and loss causation first articulated in *Schlick,* nevertheless found loss causation in a case where the facts would seem to support only a finding of transaction causation. *Marbury,* 629 F.2d at 708 (misrepresentation merely induced purchase and holding of stock). The "vehement dissent" of Judge Meskill has been lionized. *In re Catanella and E.F. Hutton and Co., Inc. Securities Litigation,* 583 F.Supp. 1388, 1416 (E.D.Pa. 1984).

6. While the court is aware of the distinction between what a plaintiff must allege and what he must prove, *see Seville Indus. Machinery v. Southmost Machinery Corp.,* 742 F.2d 786 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), the better rule is

that loss causation is a fundamental element of a cause of action under 10b–5 as much as it is for any tort, statutory or otherwise. *See Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d at 943 n. 23 (loss causation necessary for a legally sufficient claim under § 10(b) and Rule 10b–5).

7. In their brief in opposition plaintiffs assert that if Blinder's past had been revealed the stock "might never have been sold at all at the outset." Brief in Op. at 20. This assertion echos the only causation allegation found in the complaint that Alexander Grant's failure to disclose Blinder, Robinson's past pattern of fraud had a "material effect upon the decision of any potential, reasonable investor to invest in Mammatech stock." Second Amended Complaint ¶ 33(b). These allegations are clearly of transaction, and not loss, causation.

causation does not preclude recovery on underlying fraud). As for plaintiffs' state law claims, they too necessarily rise and fall on the element of causation and are therefore subject to the discussion above and, accordingly, will be dismissed as well. *Id.* at 1438.

### Civil RICO

Count IV of the complaint asserts a claim under the civil provisions of the Racketeer Influenced and Corrupt Organizations act, 18 U.S.C. § 1961 *et seq.* This count as presently pled, at least as against Alexander Grant, is a prime example of the misuse of civil RICO in cases of fraud.[8] The remainder of the count is remarkable, not for what it says but for what it does not say. Merely tracking the statutory language, it appears to assert sections (a), (b), and (c) liability against all of the defendants. Putting aside the multitude of problems such an interpretation would entail,[9] plaintiffs' brief in opposition appears to narrow its RICO allegations against Alexander Grant to § 1962(c). As plaintiffs correctly note, in order to state a cause of action under § 1962(c), plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Here we can assume, even though it is not pled, that Alexander Grant is a "person" within the meaning of § 1962(c). This is of course a critical fact since the Court of Appeals for the Third Circuit has made it clear that in § 1962(c) cases the "person" whose conduct is proscribed must be distinct from the "enterprise." *Hirsch v. Enright Refining Co.*, 751 F.2d 628 (3d Cir. 1984). The reason for this is simple. Section 1962(c) was intended to prevent the infiltration of legitimate business through illegal means. *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349 (3d Cir.1987).

However, if we try to apply this rule to the allegations of the complaint we reach an absurd result. In search of the victim, or enterprise, that has been conducted by Alexander Grant through a pattern of illegal activity we find that it is the victims who have "violated Section 10b [sic] of the Securities Act, and Rule 10(b)–5 [sic] promulgated thereunder ... in an ongoing scheme of fraudulent activity...." Brief in Op. at 26. Clearly, that allegation does not state a claim under § 1962(c) against Alexander Grant. *See Petro–Tech*, 824 F.2d at 1359 (§ 1962(c) cannot be read to make the enterprise liable). A similar analysis applies to plaintiffs' bald assertion that defendant aided and abetted the enterprises' § 1962(c) violation. One cannot aid and abet a victim. *Id.* at 1361.

Of course, it is possible that plaintiffs mean to assert, despite the clear import of their brief, a § 1962(a) claim against defendant. Even that claim is frought with difficulty since there is no allegation that Alexander Grant received any income from the predicate acts and used it, or invested it, in an enterprise, a necessary predicate for § 1962(a) liability. *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp 1532, 1537 (D.Mass.1986) (gravamen of § 1962(a) claim is not racketeering activity itself but subsequent use and investment of proceeds). Be that as it may, the court should not, in any event, be engaged in a speculative inquiry as to what plaintiffs intended to plead. Federal Rule of Civil Procedure 8, read in conjunction with the dictates of Rule 9, require plaintiffs to state in plain and simple terms the nature of their allegation. *Seville*, 742 F.2d at 786 (defendant entitled to know the precise misconduct with which they are charged). The foregoing discussion should make clear that it is impossible for this court, and hence for the defendant, to know the precise nature of the statutory

---

**8.** It should be noted here that any allegation of a violation of § 1962(d) by Alexander Grant would clearly contravene Magistrate Haneke's order that the complaint could not be amended to assert claims already dismissed. However, even if Judge Bissell had not dismissed the earlier conspiracy claims, that aspect of newly pled Count IV is as clearly insufficient as the earlier dismissed claims.

**9.** *See Acampora v. Boise Cascade*, 635 F.Supp. 66 (D.N.J.1986) (noting impossibility that multiple defendants could defend blanket accusations).

claim against it. For that reason alone, Count IV must be dismissed as to defendant Alexander Grant.

It is therefore concluded that, to the extent they name defendant Alexander Grant, the securities counts—the First and Second Claims—and the state law claims—the Third and Fifth Claims—must be dismissed for failure to allege proximate cause and therefore for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Similarly, the Fourth Claim, the civil RICO claim, must be dismissed for failure to allege the necessary elements. *Id.*

The court will enter an appropriate order.

### ORDER

This matter having been opened to the court by Cole, Schotz, Bernstein, Meisel & Forman, P.A. (Robert L. Ritter, Esq. appearing), attorneys for defendant Alexander Grant & Company, on notice to all counsel, for an order dismissing plaintiffs' complaint pursuant to Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure; and the court having read and considered the Memorandum of Law submitted on behalf of Alexander Grant & Company and having read and considered all papers submitted by plaintiffs in opposition to the motion; and the court having heard the arguments of counsel and it appearing to the court that plaintiffs have failed to state a claim against defendant Alexander Grant & Company upon which relief can be granted; and for good cause shown; and

For the reasons expressed in this court's opinion dated October 30, 1987,

ORDERED that plaintiffs' complaint as to defendant Alexander Grant & Company be and the same is hereby dismissed.